UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ERIC WRINKLES, MIKE LAMBERT, BENNY SAYLOR, and GAMBA M. RASTAFARI, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CAUSE NO. 3:03-CV-0888 AS |
| CECIL K. DAVIS, | ) ) | |
| Defendant. | ) ) | |

*REPORT AND RECOMMENDATION*

Plaintiffs Eric Wrinkles, Mike Lambert, Benny Saylor, and Gamba Rastafari, filed this *pro se* action in the LaPorte Superior Court, pursuant to 42 U.S.C. § 1983 and state law, alleging that Indiana State Prison ("ISP") superintendent Cecil Davis violated their federally protected rights and rights protected by Indiana's constitution and statutes and by Indiana Department of Correction ("IDOC") policy. The defendant removed the case to this court pursuant to 28 U.S.C. § 1441(b). The court screened the complaint pursuant to 28 U.S.C. § 1915A, dismissed all federal claims except for the plaintiffs' claim that Supt. Davis violated the Eighth Amendment's prohibition against cruel and unusual punishments by confining them to their cells for seventy-nine days without out-of-cell exercise, and dismissed, without prejudice, all of the plaintiffs' supplemental state law claims, except their damage claims for lack of out-of-cell recreation. This

case is now before the court on motions for summary judgment pursuant to Fed.

R. Civ. P. 56 filed by the defendant and plaintiff Wrinkles.[1]

> Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. *Hughes v. Joliet Correctional Ctr.*, 931 F.2d 425, 428 (7th Cir. 1991). Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue for trial allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file. *Celotex Corp.*, 477 U.S. at 324.
>
> . . . In considering whether any genuine issues of material fact exist, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there exists some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

*McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996).

---

[1] Although plaintiff Wrinkles apparently seeks summary judgment on behalf of all the plaintiffs, he was the only plaintiff to sign the summary judgment motion. Because he is not an attorney, Mr. Wrinkles may not represent the other plaintiffs.

Mr. Wrinkles served defendant Davis with his summary judgment motion and his memorandum in support of his summary judgment motion, but did not serve the Attorney Generals office even though the Attorney General had entered an appearance for the defendant. Plaintiff Wrinkles states that "Atty. Gen. is not being served because of question of being a valid party." (Brief in Support of Motion for Summary Judgment at p. 11). If, as here, an attorney appears on behalf of a defendant, Fed. R. Civ. P. Rule 5(a), requires a party to serve such counsel with a copy of every pleading, motion or other paper he files with the court. The court will consider Mr. Wrinkles's motion only because defendants' counsel has shown his awareness of the motion by responding to it.

Death Row is an administrative segregation unit at the Indiana State Prison designed to house inmates sentenced to death. The plaintiffs were all sentenced to death and housed on Death Row in late 2002 and early 2003. On October 27, 2002, prisoners on Death Row killed another inmate during recreation. Superintendent Davis placed the facility on lockdown, which means that normal prison routines were suspended and inmates were confined to their cells. Death Row remained on lockdown for seventy-nine days, though some privileges such as visitation and religious services were reinstated earlier.

The defendant's summary judgment motion asserts that the plaintiffs did not exhaust the Indiana Department of Correction's administrative grievance procedure and, alternatively, that he did not violate the Eighth Amendment's prohibition against cruel and unusual punishments by denying the plaintiffs out-of-cell recreation during the lockdown. Plaintiff Wrinkles asserts that he is entitled to judgment on the merits. He has also responded to the defendant's summary judgment motion with an declaration under penalty of perjury that the representations he makes within his response are true.

I EXHAUSTION OF ADMINISTRATIVE REMEDIES

The defendant asserts that the plaintiffs did not exhaust the administrative remedy provided by the IDOC's administrative grievance procedure. Plaintiff Wrinkles argues that the defendant waived the exhaustion of administrative remedies requirement because he did not respond to Mr. Wrinkles's "Traverse to the Return/Reply to Defendant's Answer and Statement of Defenses." Pursuant to Fed. R. Civ. P. 7, pleadings consist of:

"a complaint and an answer; a reply to a counterclaim denominated

3

as such; an answer to a cross-claim, if the answer contains a cross-claim; a third party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or third-party answer.

Because the court did not order a reply to the defendant's answer, the pleadings in this case consist of the plaintiffs' complaint and the defendant's answer. Because plaintiff Wrinkles's Traverse was not a filing authorized by the rules, the defendant had no obligation to respond to it. The defendant having plead failure to exhaust administrative remedies as an affirmative defense may present that argument in his summary judgment motion.

Pursuant to 42 U.S.C. § 1997e(a), prisoners must exhaust available administrative remedies before bringing an action with respect to prison conditions. *Booth v. Churner*, 532 U.S. 731 (2001); *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 537 (7th Cir. 1999). Section 1997e "applies to 'all inmate suits, whether they involve general conditions or particular episodes, and whether they allege excessive force or some other wrong.'" *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002), *quoting Porter v. Nussle*, 534 U.S. 516, 122 (2002). Exhaustion is "an affirmative defense that the defendants have the burden of pleading and proving." *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

The defendant's submissions establish that the IDOC grievance policy required prisoners to initiate the grievance process by filing a step one grievance within forty-eight working hours following the occurrence of the incident. A grievance specialist investigates the grievance and responds. If the grievance is not resolved at an early stage, there are a total of five steps to complete the grievance

procedure. A prisoner who does not take a timely administrative appeal of a grievance denial has not exhausted his administrative remedies for purposes of § 1997e(a). *Pozo v. McCaughtry*, 286 F.3d 1022 (7th Cir. 2002).

The defendant asserts that while each of the plaintiffs submitted at least one grievance dealing with out-of-cell recreation during the lockdown, none of them completed all five steps of the IDOC's cumbersome and unwieldy grievance process. The defendant's submissions establish that plaintiffs Mike Lambert, Benny Saylor, and Gamba Rastafari each filed one grievance. The defendant's exhibits suggest that these plaintiffs did not exhaust their remedies, and these plaintiffs have not responded to the defendant's summary judgment motion explaining why the exhaustion doctrine should not be applied to them.

The parties agree that Mr. Wrinkles grieved the suspension of out-of-cell recreation, and it does not appear that he appealed the denial of his grievances through the fifth and final level of the IDOC's lengthy, complicated, and short-fused, grievance procedure.[2] Mr. Wrinkles argues in part, under penalty of perjury, that the grievance specialist who dealt with his initial grievance did not comply with the time limits set by the IDOC grievance procedure.

Mr. Wrinkles states that he filed his first grievance on December 16, 2002, and that pursuant to policy, the grievance specialist had "10 working days to answer a stage 1 and 2 complaint." (Verified response to the defendant's summary judgment motion at p. 9). Mr. Wrinkles quotes the grievance policy as requiring that if the grievance specialist is unable to timely respond to the grievance he

_____

[2] The court will only address Mr. Wrinkles's first grievance because it was clearly timely filed and was clearly accepted by prison officials for review on the merits.

"shall notify the offender who may appeal to the next level of review." Mr. Wrinkles asserts that he should have been notified and allowed to automatically advance his grievance to the next level.

The grievance specialist finally responded to the grievance on January 24, 2003. The defendant asserts in his reply that Mr. Wrinkles's appeal was then due within two working days and argues that his second step appeal, which was filed on January 30, 2003, was untimely.

The response to Mr. Wrinkles's grievance, which is attached as an exhibit to the declaration of Grievance Specialist Karen Sabinkse, advises Mr. Wrinkles that "you must submit a written appeal to appeal this Complaint/Grievance within two (2) working days after receiving a response. Submitting a Request for Interview indicating you wish to appeal this response is sufficient." (Emphasis added). The defendant's exhibits also contain a document entitled "Request for Interview" dated January 24, 2003, from Mr. Wrinkles to the grievance specialist, in which he "request[s] appeal form for Grievance #2002-12-186 immediately." This document is stamped "RECEIVED Jan 29, 2003, GRIEVANCE OFFICE." Mr. Wrinkles filed his appeal on January 30, 2003. The grievance specialist accepted the appeal as timely because Mr. Wrinkles submitted a Request for Interview stating his desire to appeal and filed his appeal within two working days of receiving the appeal forms. Because Mr. Wrinkles complied with the grievance specialist's directives, the defendant can hardly argue now that he did not file a timely second step appeal.

The Death Row unit was closed for renovation shortly after Mr. Wrinkles filed his appeal, and the inmates housed there were transferred to the Maximum

6

Correctional Facility. On March 6, 2003, the grievance specialist denied Mr. Wrinkles's appeal. Mr. Wrinkles states, under oath, that the grievance specialist again far exceeded the IDOC grievance policy's time limits within which to respond to grievances and that per policy, he should have been allowed to automatically advance to level three of the process. The grievance specialist's response stated that the grievance was "resolved," because the lockdown was over and recreation had been restored and that "in addition, you have since been transferred to another facility. Therefore the condition no longer exsist (sic) on x-row."

Mr. Wrinkles filed a level three appeal, which he states, under oath, was rejected because it was untimely and was also rejected "on the merits of Wrinkles being; 'transferred to another facility; therefore the issue raised in that prior grievance no longer affects you.'" (Verified response to the defendant's summary judgment motion at p. 12). Mr. Wrinkles argues that because prison officials considered his grievance resolved, further appeals were futile and the grievance procedure was no longer "available" to him. Prison officials' actions and decisions may cause an "available" administrative remedy to become "unavaliable." *Lewis v. Washington*, 300 F.3d 829, 835 (7th Cir. 2002) ("administrative remedies [are] exhausted when prison officials fail to respond to inmate grievances because those remedies had become 'unavailable'").

In his step two response to Mr. Wrinkles's grievance, the grievance specialist told him that the grievance had been resolved, that the relief he sought — the opportunity to engage in out-of-cell exercise — had been implemented, and that he was no longer housed on the unit. If this means that effectively the grievance procedure was over, then Mr. Wrinkles's administrative remedies were exhausted

and further remedies were "unavailable." If the grievance specialist had rejected Mr. Wrinkles's step 3 appeal only on timeliness, it might suggest that his grievance was still alive after having been "resolved" at the second step but that the grievance specialist would not consider it because the appeal was filed beyond the IDOC's draconian two day time limit. But where, as here, the grievance specialist also addressed the merits and advised the grievant again that the grievance had been "resolved" and the condition he complained of no longer existed, it may mean — as the language used by the grievance specialist suggests — that prison officials viewed the grievance as being closed and that even timely appeals would not be considered on the merits.

"[T]he court must not proceed to render a substantive decision until it has first considered § 1997e(a). The statute gives prisons and their officials a valuable entitlement — the right *not* to face a decision on the merits — which courts must respect if a defendant chooses to invoke it." *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d at 536. (emphasis in original). The defendant has invoked § 1997e(a), and provided unrebutted evidence that plaintiffs Lambert, Saylor, and Rastafari did not appeal the denial of their grievances. Accordingly, it is recommended that the court grant the defendant's summary judgment as to plaintiffs Lambert, Saylor, and Rastafari, and dismiss their federal law claims from this case without prejudice and without considering them on the merits. The parties' verified statements and exhibits, however, create unresolved questions as to whether the grievance specialist properly followed the IDOC grievance policy in regard to time limits and whether the grievance process became unavailable to Mr. Wrinkles after his grievance was "resolved."

The IDOC grievance policy puts very short-fused time limits on inmates, and also provides brief time limits within which grievance officials are to act. Mr. Wrinkles assets that the grievance specialist failed to timely act on his grievance and should therefore have given him the opportunity to automatically advance his grievance to the next step. But the evidence before the court does not establish that Mr. Wrinkles's grievance was rejected only on timeliness; his step two appeal was accepted as timely and his step three appeal was rejected on the twin grounds of timeliness and because it had already been resolved.

The question of whether the grievance process effectively ended at the second stage for Mr. Wrinkles because prison officials deemed his grievance to have been resolved in his favor or because he was no longer at the ISP is more significant. Because Supt. Davis is the moving party and because he bears the burden of proving the affirmative defense of exhaustion, the court must "extract all reasonable inferences from the evidence in the light most favorable to" Mr. Wrinkles as the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 586. On the record before the court and giving Mr. Wrinkles the benefit of the inferences to which he is entitled, the court cannot say conclusively that the IDOC grievance procedure remained an "available" remedy for Mr. Wrinkles after the grievance specialist determined that his grievance was resolved because the relief he sought had already been implemented and because he was no longer housed on the Death Row Unit. Accordingly, it is recommended that this court review the merits of the question of whether Supt. Davis violated Mr. Wrinkles's Eighth Amendment rights by placing the Death Row unit on lockdown for seventy-nine days with no out-of-cell recreation.

9

II. ARGUMENTS ON THE MERITS OF THE
EIGHTH AMENDMENT RECREATION CLAIM

Mr. Wrinkles alleges that denial of out-of-cell recreation for seventy-nine days violated the Eighth Amendment's cruel and unusual punishments clause.

> An Eighth Amendment claim has two components -- objective and subjective. To satisfy the objective component, "the deprivation alleged must be objectively, 'sufficiently serious.'" *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "Therefore, 'extreme deprivations are required to make out a conditions-of-confinement claim'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 9, 212 S.Ct. 995, 117 L.Ed.2d 156 (1992).

*Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001).

In *Delaney v. DeTella*, the plaintiff alleged that denial of out-of-cell exercise opportunities during a six month lockdown constituted an objectively serious deprivation of a basic human need. The Seventh Circuit noted that:

> In recent years, we have not only acknowledged that a lack of exercise can rise to a constitutional violation, *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1986), but have concluded that "exercise is now regarded in many quarters as an indispensable component of preventive medicine." *Anderson v. Romero*, 72 F.3d 518, 528 (7th Cir. 1995). Given current norms, exercise is no longer considered an optional form of recreation, but is instead a necessary requirement for physical and mental well-being.

*Delaney v. DeTella*, 256 F.3d at 683-684.

Plaintiff Wrinkles asserts that the defendant violated several state statutes, including IC 11-11-5-8, IC 11-10-11-2, and IC 11-11-5-4, and that he violated IDOC procedures when he put the Death Row Unit on lockdown. The first inquiry in every § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. at

10

140. Mr. Wrinkles's claim that the defendant violated Indiana law or departmental procedures states no claim under § 1983.

Plaintiff Wrinkles asserts that the defendant violated a consent decree in *Smith v. Aiken*, 3:82cv526 AS. But even if placing the Death Row Unit on lockdown as a result of the emergency created by the murder of an inmate denied prisoners recreation mandated by *Smith v. Aiken*, it has no implication on the question of whether lack of out-of-cell recreation for seventy-nine days violated the Eighth Amendment. If Mr. Wrinkles believes Supt. Davis violated the consent decree in *Smith v. Aiken*, he must present his claims in that case.

Plaintiff Wrinkles asserts in his affidavit that as a result of being in his cell for seventy-nine days during the lockdown he "suffered depression, anxiety, back pain, and a significant rise in blood pressure as well as atrophy of the muscles from the stress of these deprivations." (Wrinkles affidavit at p. 1). The Constitution requires that "some opportunity for exercise must be afforded to prisoners." *Anderson v. Coughlin*, 757 F.2d 33, 34 (2d Cir. 1985). "Where movement is denied and muscles are allowed to atrophy, the health of the individual is threatened, and the state's constitutional obligation is compromised." *Stewart v. McGinnis*, 800 F.Supp. 604, 615 (N.D. Ill. 1992) *aff'd.*, 5 F.3d 1031 (7th Cir. 1993); *cert. denied*, 510 U.S. 1121 (1994). But Mr. Wrinkles's affidavit is not sufficient to support summary judgment in his favor; he has submitted no expert testimony or other admissible evidence concerning the extent to which his muscles may have atrophied or linking any physical injury directly to lack of out-of-cell recreation during the seventy-nine day lockdown.

The question before the court is whether keeping Death Row inmates in

their cells for seventy-nine days without out-of-cell recreation constitutes cruel and unusual punishment. The Seventh Circuit has noted that:

> Although we have recognized the value of exercise and its medicinal effects, we have also consistently held that short-term denials of exercise may be inevitable in the prison context and are not so detrimental as to constitute a constitutional deprivation. *Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1997) (70 day denial permissible); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (28 day denial not deprivation); *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1089 (7th Cir. 1986) (limited recreational activities sufficient where average prison stay was 10 days or less); *Caldwell v. Miller*, 790 F.2d 589, 601 (7th Cir. 1986) (no deprivation where exercise was denied for 30 days, but then allowed one hour indoor exercise for next 6 months); *but see Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) (viable constitutional claim where prisoner denied recreational opportunities for 7 weeks); *Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (1989) (reversing summary judgment for prison officials where segregated prisoner denied exercise for 101 days).

*Delaney v. DeTella*, 256 F.3d at 683-684.

The plaintiffs were denied out-of-cell recreation for a slightly longer than the period of time found not to state a claim in *Thomas v, Ramos,* 130 F.3d at 764, and also longer than the period of time found to state a claim in *Antonelli v. Sheahan*, 81 F.3d at 1432. In reviewing lack of out-of-cell recreation claims, the Seventh Circuit considers the length of time an inmate was deprived of out-of-cell recreation in conjunction with the size of the cell in which he was confined. In *Antonelli v. Sheahan*, the Seventh Circuit court found that an inmate confined in his cell for seven weeks without out-of-cell recreation had "a viable Eighth Amendment claim because he did not have sufficient room for any type of recreation within his cell." *Thomas v. Ramos*, 130 F.3d at 764. But another inmate confined in his cell for seventy days, "was not in this situation while he was confined in segregation because he would have been able to engage in exercise in

12

his cell such as push-ups, sit-ups, jogging in place, and step-ups." *Id.* 130 F.3d at 764. In *Pearson v. Ramos,* 237 F.3d 881 (7th Cir. 2001), the Seventh Circuit concluded that segregating an inmate for ninety days without out-of-cell recreation did not violate the Eighth Amendment.

In *Delaney v. DeTella*, the Seventh Circuit found the prisoner's claim viable, because "for 6 months, Delaney remained in a cell the size of a phone booth without any meaningful chance to exercise." *Id.* at 684. The cells in the unit in which Delaney was confined "were small and cramped, measuring only about 122 inches by 43 to 56 inches," *Id.* at 682, and were, at most, about 47.5 square feet in size — not all of which was space usable for exercise. *Delaney v. DeTella*, 256 F.3d at 682.

The defendant submits the declaration of Indiana State Prison Plant Director Brad Cox. Mr. Cox states that the Death Row cells are 115 square feet in size and each contained over eighty square feet of unused space that could be used for exercise. Mr. Cox attaches a diagram of the cells to his declaration. Plaintiff Wrinkles submits his own diagram of a Death Row cell, differing slightly from the defendant's version. According to Mr. Wrinkles, the cells were 9'9" by 11' 4" and had a total square footage of 113.26 square feet. He asserts that the usable floor space for exercising was between sixty-four and sixty-eight square feet.

Even accepting the plaintiff's diagram and description of the dimensions of the cells in death row as accurate, these cells are larger than those described in *Antonelli v. Sheahan* and *Delaney v. DeTella*, and, like the cells described in *Thomas v. Ramos*, the plaintiffs had sufficient room to be able to engage in exercise in their cells such as push-ups, sit-ups, jogging in place, and step-ups.

13

Because the plaintiffs had the space and opportunity to exercise within their cells, this case is analogous to *Thomas v. Ramos* and *Pearson v. Ramos*, and lack of out-of-cell recreation for seventy-nine days would not violate the Eighth Amendment's prohibition against cruel and unusual punishments.

### III. STATE LAW CLAIMS

In addition to their Eighth Amendment claim, the plaintiffs allege that Superintendent Davis violated rights protected by Indiana law when he placed the Death Row Unit on lockdown. Pursuant to 28 U.S.C. § 1367, which codified the pendent jurisdiction doctrine, federal courts, unless otherwise provided by statute, "have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy."

Federal courts, however, generally should relinquish supplemental jurisdiction over state law claims when the federal claims are dismissed before trial. *See* 28 U.S.C. § 1367(c)(3). Accordingly, the if the court dismisses the plaintiffs' Eighth Amendment claim, it should dismiss the state law claims that are supplemental to that claim. Because this case originated in state court, it is logical to remand the state law claims to the state court.

### IV .CONCLUSION

For the foregoing reasons, the court **RECOMMENDS** that Plaintiff Wrinkles's motion for summary judgment (docket #70) be **DENIED,** that the defendant's m-otion for summary judgment (docket #78) be **GRANTED** as to the plaintiffs' federal law claim, that the federal law claims of plaintiffs Mike Lambert, Benny Saylor, and Gamba Rastafari be **DISMISSED** without prejudice, that the court **GRANT** summary judgment on to the defendant on the merits of plaintiff Wrinkles's

Eighth Amendment claim, and that the court decline to retain jurisdiction over the state law claims and **REMAND** the complaint to LaPorte Superior Court.

**ANY OBJECTIONS to this report and recommendation must be filed with the Clerk of courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Lockert v. Faulkner*, 843 F.2d 1015 (7th Cir. 1988); *Video Views, Inc. v Studio 21 Ltd.,* 797 F.2d 538 (7th Cir. 1986)**

**SO ORDERED**.

Dated this 16th day of September, 2005.

s/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge